**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**SOCIAL SERVICES DIVISION - ADULT BRANCH**

**PRESENTENCE REPORT**

Re: Gregory Longus

PDID No. 354 542
Docket No.: F-1862-99

To: The Honorable Stephen G. Milliken

Date Referred: 6-23-99
Date Due: 9-7-99

From: Probation Officer Joan Graham

Sentencing Date: 9-10-99

Aliases: None known

Tel. #: (02) 269 3068

**Defendant Information:**
True Name: Gregory Milton Longus, Jr.

Address: 501 Edgewood St NE
#315 Washington, D.C. 20017

Age/Birthdate: 30/9-21-68   Sex: Male   Birthplace: Washington, D.C.

Citizenship: U.S.
Alien No: N/A

Time in D.C. Area: Life

Marital Status: Single   Dependents: 2

Education: GED

Social Security No.: 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

Permit No.: VA (SSN)

DCDC No.: 261 348

FBI No.: 09 378 HA2

Offense, Code and Penalty: Threats/Felony; 22-2307; up to 20 years.

Plea: Guilty   Judgment: Guilty

Bond Status: No bond

Detainers or Pending Charges: None

Co-defendants:
None
(Dkt No.):
(Dkt No.):
(Status):
(Status):

AUSA: Mark Carroll

Telephone: (202) 305-1396

Defense Counsel: Stephen Jackson

Telephone: (202) 393-7347

"In accordance with the U.S. Parole Commission and Reorganization Act, Public Law 94-233, dated March 15, 1976 this report is disclosable to inmates in federal institutions for purposes of parole consideration."

2

**CONTACTS:**

7-4-99    Telephone conversation/AUSA Mark Carrol:

7-15-99   Jail visit/defendant.

7-15-99   Telephone conversation/Dr. Holles, Forensic Psychiatry.

7-22-99   Telephone conversation/Deborah Longus, defendant's mother.

7-27-99   Telephone conversation/Tanya Longus, defendant's sister.

9-2-99    Telephone conversation/Dr. Fay-Dumaine, Forensic Psychiatry.

9-2-99    Telephone conversation/Charles Ransom, defendant's uncle.

**OFFICIAL VERSION:**

The listed offense occurred on 3-21-99 at approximately 0115 hours in the 2400 block of 4th Street, N.E. in Washington, D.C. On 3-21-99 at approximately 0119 hours, the undersigned and Officer Sulla responded to 601 Edgewood Street, N.E. for a radio run of an Assault. Upon the officers' arrival, Witness One was interviewed and stated that the defendant Gregory Longus broke a beer bottle and approached her from behind, cutting the right side of her head with severe lacerations to her ear. Witness One stated that after she was cut, Defendant Longus then dragged her from Fourth Street to 601 Edgewood Street, N.E. Witness One stated that she and Defendant Longus were just friends and that Defendant Longus lived in apartment 316. Witness Two also confirmed that he observed Defendant Longus dragging Witness One inside of the building. Defendant Longus was located inside of apartment 315, where he was arrested. Defendant Longus was positively identified on the scene by Witness One and was transported to the Fifth District, where he was advised of his rights and processed.

**DEFENDANT'S VERSION:**

"I never touched her. I only admit to trying things I shouldn't have and also being around her (in violation of the Stay Away Order). The prosecutor was trying to paint the picture that I was stalking her. I didn't cut her ear. The two witnesses was going to testify that somebody else cut her. I don't know who it was. I don't know why the people (the witnesses) didn't call the police. Most people don't want to get involved in a domestic incident. How could I drag her that far (10 or 12 blocks)? I made a bad choice in character (in becoming involved with Adrienne Young). My whole family told me to leave her alone. I did love her, though."

PRIOR CRIMINAL RECORD:

**Adult: Prince George's County, MD**

| Date | Charge | Case # | Disposition | Agency |
|---|---|---|---|---|
| 4-1-87 | Trespassing | 0638983E2 | Stet dkt. | MDPP |
| | Unauthorized Use of a Vehicle | 0639465E1 | Stet dkt. | " |

**Washington, D.C.**

| 6-7-87 | Simple Assault | M-6811-87A | 6-8-87 No papered | DCSC |

**Prince George's County, MD**

| 12-12-87 | Assault | 0652823E3 | Nolle prosequi | MDPP |
| | Unauthorized Use of a Vehicle | 0646603E1 | Nolle prosequi | " |
| 2-9-88 | Destruction of Property | 0650155E2 | Guilty; Conf. 2 days | " |
| | Theft Over $300 | 0062305E5 | Nolle prosequi | " |
| 6-22-88 | Burglary With Intent to Steal/ Daytime; Battery | 0653145E6 | Nolle prosequi (both counts) | " |
| 2-28-89 | Possession of Cocaine | 0079586E3 | Nolle prosequi | " |
| 10-29-89 | Theft Over $300 | 0679951E6 | Nolle prosequi | " |
| 9-25-90 | Malicious Destruction of Property of Another | 0688lE4 | Guilty; Conf. 2 days | " |

3

4

Washington, D.C.

| Date | Charge | Case No. | Date | Disposition | Court |
|---|---|---|---|---|---|
| 10-20-98 | Armed Burglary I Count B | M-15489-98A | 10-21-98 | No papered | DCSC |
| | Threat to Injure a Person Count B | | | No papered | " |
| | Threat to do Bodily Harm Count C | | 2-1-99 | Dismissed for want of prosecution | " |
| | Destruction of Property Count D | | 2-1-99 | Dismissed for want of prosecution | " |
| | Unlawful Entry Count E | | 2-1-99 | Dismissed for want of prosecution | " |
| 1-25-99 | Attempted Burglary | M-917-99A | 1-26-99 | No papered | " |
| | Destruction of Property-Domestic | | 4-27-99 | Acquitted | " |
| 3-21-99 | Assault With a Dangerous Weapon | F-1862-99A | 5-26-99 | Indicted | " |
| | Threat to Injure a Person Count C | | | Instant Offense *NG* 3-0 | " |
| | Armed Burglary I Count B | | 9-10-99 | To be dismissed | " |
| | Assault with a Dangerous Weapon Count D | | 9-10-99 | to be dismissed | " |
| | Carrying a Pistol Without a License Count E | | 9-10-99 | to be dismissed | " |
| | Possession of a Firearm during the Commission of a Crime of Violence Count F | | 9-10-99 | to be dismissed | " |

5

| 3-21-99 (con't) | Aggravated Assault Count G | 9-10-99 to be dismissed |
| --- | --- | --- |
| | Malicious Disfigurement Count H | 9-10-99 to be dismissed |

## PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT:

The defendant has never been on probation or parole. Until now, his longest period of incarceration has not been more than a couple of nights in jail. During the pre-disposition phase, he has been at D.C. Jail.

## EMPLOYMENT HISTORY:

From: Summer 1997 to winter 1998 (claimed by defendant)
Name of Employer: Unified Services
Address: The defendant worked at PEPCO's Benning Road Power Station, Northeast Washington, D.C.
Telephone Number: 202 872-2000
Position/Salary: Maintenance man/$13.50 per hour
Reason for Leaving: The defendant stated, "I had to work in my mother's catering business and the hours conflicted."
Verification: Since July of 1999, this writer has left several messages at PEPCO's Human Resources Office, requesting verification of employment. The calls have not been returned. However, recently the defendant's uncle, Charles Ransom, reported that he had helped the defendant obtain this job, and they did not work directly for PEPCO, but rather for Unified Services, a now-defunct company which had a maintenance contract with PEPCO. Mr. Ransom says that he does not remember the dates of the defendant's employment, but he thinks that the salary reported by the defendant might be correct. This writer expressed the opinion that $13.50 seemed high for maintenance work, but Mr. Ransom responded that there was some danger involved so PEPCO was willing to pay more. Mr. Ransom, telephone 301 218-0475, also says that the defendant has worked with him in his silkscreening business.
Comments: The defendant's mother, Deborah Longus, confirmed that she, the defendant, and a longtime friend of hers, Emmett Melvin, have a catering business. It is out of a mobile kitchen and they usually park at Fourth Street and Rhode Island Avenue, N.E. The business is known as "Mr. Ribs," telephone (202) 291-4083, and, in addition to serving customers at that location, they cater large parties. She says that the defendant has worked with her and Mr. Melvin on and off for the last five years.

## SOCIAL HISTORY:

Sources of Verification: Defendant's mother, defendant's sister, defendant's uncle.

6

## Family History

The defendant's parents, Deborah Longus and Gregory Longus, Senior, are still married but they separated when he was eleven years old. He commented, "I didn't like it when my parents split up, but later I came to understand that two people can love each other but not live together." Currently his mother lives at 601 Edgewood Street, N.E. Apartment 316, Washington, D.C. 20017, telephone (202) 269-3068, and his father lives at 2834 Minnesota Avenue, Southeast, Apartment 1, Washington, D.C. 20020, telephone (202) 575 0515. The defendant's only sibling is his sister, Tanya Longus, who is 15 months younger. She is a sergeant in the Metropolitan Police Department and she resides at 20 33rd Street, N.E., Washington, D.C., telephone (202) 388-6780.

The defendant's mother says that the family is close. The defendant told this writer that, with the exception of his parents' separation, his childhood was good. His mother reports that she sent him to live with his maternal grandmother in Prince George's County when he was in high school because she felt that the schools there were superior. Both her mother and her mother's mother are still living. The defendant's great-grandmother often asks for him but no one wants to tell her that he is in jail. According to Ms. Longus, the worst law violation anyone in their extended family has ever had is a parking ticket!

## Marital Status and Living Arrangements

The defendant is single but claims paternity of two sons. Their mother is LaShonda Ricks, whom he describes as his "fiancee." He was asked about his relationship with the victim, Adrienne Young, as he was claiming that he and Ms. Ricks had been together for nine years. He answered that he was "not ready to settle down" before but feels that he is now. Ms. Ricks and he have two children live in Northeast D.C., telephone (202) 396-1959. According to the defendant and his family, the numerous Prince George's County complaints were brought against him by Ms. Ricks' mother.

Although the defendant has the family with Ms. Ricks, he lives with his mother. When asked why he is not with his children, he replied, "I live with my mother out of convenience."

## Military

The defendant has no history of military service.

## Education/Training

The defendant went to three different high schools but did not finish. However, he claims that he obtained a GED.

7

## Financial Status

The defendant says that his health had been satisfactory; however, incarceration is exacerbating his ulcers. He is also experiencing insomnia.

### Health

The defendant was aware that he would have a psychiatric examination. He says that he has no history of mental illness or reason to believe that he is now suffering from any type of mental illness. His mother and sister are not aware of any problems of this nature. Dr. Fay-Dumaine does not believe that the defendant is mentally ill.

### Substance Use/Abuse

The defendant says that he drinks "a beer here and there" but he denies that he has ever used any drugs.

### EVALUATION AND DIAGNOSIS:

Gregory Longus, a 30 year old lifetime resident of the District of Columbia, is before Your Honor for sentencing after having pled guilty to Threats/Felony. The defendant admits that he threatened Adrienne Young but he adamantly denies ever being physically violent toward her. It may be that he is admitting the threats because they were overheard by police officers while he was sitting in a patrol car! According to AUSA Carroll, the defendant said, "I'm going to fuck her ass up or get someone else to fuck her up! The defendant's words would be deplorable enough, but what followed in the intervening months cast his words in an even more sinister light. According to AUSA Carroll, on 1-25-99 the defendant kicked in the door and threw a rock through the window of a house where Ms. Young was visiting. On 3-21-99, according to Ms. Young, the defendant grabbed her and cut her ear in half. Although the defendant denies that he committed this offense (and this count will be dismissed), it is still undeniable that Ms. Young's ear was split in half. The defendant also admitted to this writer that he had violated Stay Away orders which Ms. Young had requested.

The defendant denies that he has ever been violent towards women. He says that the only violent act he can ever recall committing toward anyone was breaking his father's windshield in anger. He adamantly denies ever assaulting women and his mother and sister say that they have never known him to do so. However, he has been accused of violent crimes involving women on numerous occasions (although most of the cases did not result in convictions).

8

A psychiatric evaluation was ordered; however, he and his relatives told this writer that there is no history of mental illness or reason to suspect that this is a concern. In conversation, the defendant did not appear, to th_e layperson, to be suffering from any type of mental disorder. After examining him, Dr. Fay-Dumaine also concluded that he is not mentally ill.

The defendant apparently comes from a lawabiding family where gainful employment is the norm. He was upset when his parents separated when he was eleven years old but he maintained contact with both. He is close to his sister, who, like many of his relatives, works as a police officer.

The defendant referred several times in the conversation to his "fiancee," LaShonda Ricks. He said quite proudly that they had been together nine years and have two sons, ages nine and five. He also boasted, "I've always taken care of my children!" However, he says that most recently he was living with his mother "out of convenience." And, obviously, the circumstances involving the complainant in the instant Offense belies his claims of being a family man.

If the defendant has had any jobs that he did not get through his mother or his maternal uncle, he did not mention them. He is close to his family, and, while there is nothing wrong with that per se, one gets the impression that he is a somewhat immature individual who is indulged by his relatives, particularly his mother. It seems that Ms. Longus turns a blind eye and a deaf ear to any faults her son might have. She dismisses t[h]e problems with Ms. Young as all based on Ms. Young's instability and tendency toward melodrama. While it may or may not be true that Ms. Young tends to dramatize events, certainly the injuries that she has suffered in the last year are not something that an overwrought imagination dreamed up. Clearly she has been hurt and it would appear that, even after numerous warnings, the defendant did not stay away from her. As noted, he made threats, even in front of the police officers! If he will talk about hurting someone in the presence of police officers, one shudders to think of what he might do when no one is around. In this writer's opinion, Mr. Longus totally lost his sense of proportion after he became involved with Ms. Young. While he has seemingly been fortunate to have many similar type charges dismissed in the past (both in D.C. and Prince George's County, Maryland), this writer believes that his aggressiveness is escalating. Incarceration is appropriate, in this writer's opinion, although, according to At[t]a Carroll, the victim is only asking that the defendant receive therapy.

**TREATMENT PLAN:**

Counseling (in a secure setting) to counter aggressiveness.

**RECOMMENDATION:**

Incarceration is respectfully recommended.

Respectfully submitted,

*[signature]*
Joar Graham
Probation Officer
(202) 508-1648

Approved by: *[signature]*
Frankie McNeil-Bright
Supervisory Probation Officer
(202) 508-1619

9