**Court Services and Offender Supervision Agency**
**for the District of Columbia**
*Community Supervision Services*
*Investigations, Diagnostics, and Evaluations Branch*

# REVISED PRESENTENCE REPORT

|  |  |
|---|---|
| Re: Gregory Longus | PDID No.: 354-5-2 |
|  | Docket No.: F-1152-99 |
| To: The Honorable Stephen G. Milliken | Date Referred: 6-23-99 |
|  | Date Due: 9-7-99 |
| From: SCSO Karen McDaniel | Sentencing Date: 9-10-99 |

**Defendant Information:**
True Name: Gregory Milton Longus, Jr.

Aliases: None known                                Tel. #: (202) 269-3068

| | |
|---|---|
| | Address: 601 Edgewood St. NE #316 Washington, DC 20017 |
| Social Security No.: 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 | Birthplace: Washington, DC |
| | Citizenship: US |
| | Alien No.: N/A |
| Marital Status: Single    Dependents: 2 | Education: GED |
| Time in DC Area: Life | Permit No.: VA (SSN) |
| Age/Birthdate: 30/9-21-68    Sex: Male | FBI No.: 209378 HA2 |
| DCDC No.: 261 348 | |

Offense, Code and Penalty: Threats/Felony; 22-2307; up to 20 years.

| | | |
|---|---|---|
| Plea: Guilty | Judgment: Guilty | Bond Status: No Bond |

Detainers or Pending Charges: None

Co-defendants: None                                (Dkt No.):                (Status):

AUSA: Mark Carroll                                                Telephone: (202) 305-1396

Defense Counsel: Stephen Jackson                     Telephone: (202) 393-7347
800 North Capitol Street, NW, Room 2267, Washington, DC 20002-4237
Voice: (202) 442-1441   Fax: (202) 442-1594

Court Services and Offender Supervision Agency

Page 2

CONTACTS:

| | |
|---|---|
| 7-4-99 | Telephone conversation with AUSA Mark Carroll. |
| 7-15-99 | Jail visit/defendant. |
| 7-15-99 | Telephone conversation/Dr. Hoiles, Forensic Psychiatry |
| 7-22-99 | Telephone conversation/Deborah Longus, defendant's mother. |
| 7-27-99 | Telephone conversation/Tanya Longus, defendant's sister. |
| 9-2-99 | Telephone conversation/Charles Ransom, defendant's uncle. |

OFFICIAL VERSION:

*The below came on entry of a plea before the Honorable Stephen G. Milliken, Senior Judge in Courtroom Number 311 on Wednesday, June 23, 1999 commencing at 10:22 a.m. Appearing on behalf of the Government was Mark Carroll, Esquire and on behalf of the defendant was Steven Jackson, Esquire:*

On October 20, 1998, in the area of 315 Franklin Street, NE, Apartment Number 101, where Adrian Young, the defendant's friend was living, the defendant forced his way into that apartment. She had a chain lock on the door, and he broke the door. And she called the police, and he left, but he was arrested outside. And after being arrested and confronted by the police, he gave the police, referring to Adrian Young, all this shit is going to make me do is make me fuck her ass up, and I'm going to get someone to fuck her up, and he said that in the presence of two officers.

**DEFENDANT'S VERSION:**

"I never touched her. I only admit to saying things I shouldn't have and also being around her (in violation of the Stay Away Order). The prosecutor was trying to paint this picture that I was stalking her. I didn't cut her ear. The two witnesses was going to testify that somebody else cut her. I don't know who it was. I don't know why the people (witnesses) didn't call the police. Most people don't want to get involved in a domestic incident. How could I drag her that far (10 or 12 blocks)? I made a bad choice in character (in becoming involved with Adrienne Young). My whole family told me to leave her alone. I did love her, though."

**PRIOR CRIMINAL RECORD:**

**ADULT:** Prince George's County, MD

| Date | Charge | Disposition | Court |
|---|---|---|---|
| 4-1-87 | Trespassing 063898E2 | Stet dkt. | MDPP |
| | Unauthorized Use of a Vehicle 063946E1 | Stet dkt. | " |

Washington, DC

| | | | |
|---|---|---|---|
| 6-7-87 | Simple Assault M-6811-87A | 6-8-97 No Papered | DCSC |

Prince George's County, MD

| | | | |
|---|---|---|---|
| 12-12-87 | Assault 0652823E3 | Nolle Prosequi | MDPP |
| | Unauthorized Use of a Vehicle 064603E1 | Nolle Prosequi | |
| | Destruction of Property 065015E2 | Guilty; Confinement 2 days | |
| 2-9-88 | Theft over $300 0062305E5 | Nolle Prosequi | |
| 6-22-88 | Burglary with Intent To Steal/Daytime Battery 06531 | Nolle prosequi (both counts) | |

Court Services and Offender Supervision Agency

| Date | Offense | Disposition | Court |
|---|---|---|---|
| 2-28-89 | Possession of Cocaine 0079586E3 | Nolle Prosequi | MDPP |
| 10-29-89 | Theft over $300 0679951E6 | Nolle Prosequi | |
| 9-25-90 | Malicious Destruction of Property of Another 06881E4 | Guilty; Confinement 2 days | |
| | **Washington, DC** | | |
| 10-20-98 | Armed Burglary I M15489-98A | 10-21-98 No Papered | DCSC |
| | Threat to Injure A Person Count B | No Papered | |
| | Threat To Do Bodily Harm Count C | 2-1-99 Dismissed for Want of Prosecution | |
| | Destruction of Property Count D | 2-1-99 Dismissed for Want of Prosecution | |
| | Unlawful Entry Count E | 2-1-99 Dismissed for Want of Prosecution | |
| 1-25-99 | Attempted Burglary M-917-99A | 1-26-99 No Papered | |
| | Destruction of Property Domestic | 4-27-99 Acquitted | |
| 3-21-99 | Assault With A Dangerous Weapon F-1862-99A | 5-26-99 Indicted | |
| | Armed Burglary I Count B | 9-10-99 To Be Dismissed | |
| | Threat to Injure A Person Count C | **INSTANT OFFENSE** | |
| | Assault With A Dangerous Weapon – Count D | 9-10-99 To Be Dismissed | |

Page 4

| | | |
|---|---|---|
| 3-21-99 | Carrying A Pistol Without License | 9-10-99 To Be Dismissed |
| | Count E | DCSC |
| | Possession of a Firearm During the Commission Of a Crime of Violence | 9-10-99 To Be Dismissed |
| | Count F | |
| | Aggravated Assault | 9-10-99 To Be Dismissed |
| | Count G | |
| | Malicious Disfigurement | 9-10-99 To Be Dismissed |
| | Count H | |

## PROBATION/PAROLE/PRE-DISPOSITION ADJUSTMENT:

The defendant has never been on probation or parole. Until now, his longest period of incarceration has not been more that a couple of nights in jail. During the pre-disposition phase, he has been at DC Jail.

## EMPLOYMENT HISTORY:

From: Summer 1997 to winter 1998 (claimed by defendant)
Name of Employer: Unified Services
Address: The defendant worked at PEPCO's Benning Road Power Station, Northeast, Washington, DC
Telephone Number: 202 872-2000
Position/Salary: Maintenance man/$13.50 per hour
Reason for Leaving: The defendant stated, "I had to work in my mother's catering business and the hours conflicted."
Verification: Since July of 1999, this writer has left several messages at PEPCO's Human Resources Office, requesting verification of employment. The calls have not been returned. However, recently, the defendant's uncle, Charles Ransom, reported that her helped the defendant obtain this job and they did not work directly for PEPCO, but rather for Unified Services, a now-defunct company which had a maintenance contract with PEPCO. Mr. Ransom says that he does not remember the dates of the defendant's employment, but he thinks that the salary reported by the defendant might be correct. This writer expressed the opinion that $13.50 seemed high for maintenance work, but Mr. Ransom responded that there was some danger involved so PEPCO was willing to pay more. Mr. Ransom, telephone 301 218-0475, also says that the defendant has worked with him in his silk screening business.
Comments: The defendant's mother, Deborah Longus, confirmed that she, the defendant, and a longtime friend of hers, Emmett Melvin, have a catering business. It is out of a mobile kitchen and they usually park at Fourth Street and Rhode Island Avenue, NE. The business is known as "Mr. Ribs," telephone 202 288-4083, and, in addition to serving customers at that location, they

cater large parties. She says that the defendant has worked with her and Mr. Melvin on and off for the last five years.

## SOCIAL HISTORY:

Sources of Verification: Defendant's mother, defendant's sister, defendant's uncle.

### Family History

The defendant's parents, Deborah Longus and Gregory Longus, Senior, are still married but they separated when he was eleven years old. He commented, "I didn't like it when my parents split up, but later I came to understand that two people can love each other but not live together." Currently his mother lives at 601 Edgewood Street, NE Apartment 316, Washington, DC 20017, telephone 202 269-3068, and his father lives at 2834 Minnesota Avenue, Southeast, Apartment 1, Washington, DC 20020, telephone 202 575-0515. The defendant's only sibling is his sister, Tanya Longus, who is 15 months younger. She is a sergeant in the Metropolitan Police Department and she resides at 220 33rd Street, NE, Washington, DC, telephone 202 388-6780.

The defendant's mother says that the family is close. The defendant told this writer that, with the exception of his parents' separation, his childhood was good. His mother reports that she sent him to live with his maternal grandmother in Prince George's County when he was in high school because she felt that the schools there were superior. Both her mother and her mother are still living. The defendant's great-grandmother often asks for him but no one wants to tell her that he is in jail. According to Ms. Longus, the worst law violation anyone in their extended family has ever had is a parking ticket!

### Education/Training

The defendant went to three different high schools but did not finish. However, he claims that he obtained a GED.

### Military

The defendant has no history of military service.

### Marital Status and Living Arrangements

The defendant is single but claims paternity of two sons. Their mother is LaShonda Ricks, whom he describes as his "fiancée." He was asked about his relationship with the victim, Adrienne Young, as he was claiming that he and Ms. Ricks had been together for nine years. He answered that he was "not ready to settle down" before but feels that he is now. Ms. Ricks and the two children live in Northeast DC, telephone 202 396-1959. According to the defendant and his family, the numerous Prince George's County complaints were brought against him by Ms. Ricks' mother.

Although the defendant has the family with Ms. Ricks, he lives with his mother. When asked why he is not with the children, he replied, "I live with my mother out of convenience."

## Financial Status

The defendant says that he has no money in savings and he owes money for Ms. Ricks' utility bills.

## Health

The defendant says that his health had been satisfactory; however, incarceration is exacerbating his ulcers. He is also experiencing insomnia.

The defendant was aware that he would have a psychiatric examination. He says that he has not history of mental illness or reason to believe that he is now suffering from any type of mental illness. His mother and sister are not aware of any problems of this nature. Dr. Fay-Dumaine does not believe that the defendant is mentally ill.

## Substance Use/Abuse

The defendant says that he drinks "a beer here and there", but he denies that he has ever used any drugs.

## EVALUATION AND DIAGNOSIS:

Gregory Longus, a 30 year old lifetime resident of the District of Columbia, is before Your Honor for sentencing after having pled guilty to Threats/Felony. The defendant admits that he threatened Adrienne Young, but he adamantly denies ever being physically violent toward her. It may be that he is admitting the threats because they were overheard by police officers while he was sitting in the patrol car! According to AUSA Carroll, the defendant said, "I'm going to fuck her ass up or get someone to fuck her up!" The defendant also admitted to this writer that he had violated Stay Away orders, which Ms. Young has requested.

The defendant denies that he has ever been violent towards women. He says that the only violent act he can ever recall committing toward anyone was breaking his father's windshield in anger. He adamantly denies ever assaulting women and his mother and sister say that they have never known him to do so. However, he has been accused of violent crimes involving women on numerous occasions (although most of the cases did not result in convictions).

A psychiatric evaluation was ordered; however, he and his relatives told this writer there is no known history of mental illness or reason to suspect that this is a concern. In conversation,

the defendant did not appear, to this layperson, to be suffering from any type of mental disorder. After examining him, Dr. Fay-Dumaine also concluded that he is not mentally ill.

The defendant apparently comes from a lawabiding family where gainful employment is the norm. He was upset when his parents separated when he was eleven years old, but maintained contact with both. He is close to his sister, who like many of his relatives, works as a police officer.

The defendant referred several times in the conversation to his "fiancée," LaShonda Ricks. He said quite proudly that they had been together nine years and have two sons, ages nine and five. He also boasted, "I've always taken care of my children!" However, he says that most recently, he was living with his mother "out of convenience." And, obviously, the circumstances involving the complainant in the Instant Offense belie his claim of being a family man.

If the defendant has had any jobs that he did not get through his mother or maternal uncle, he did not mention them. He is close to his family, and, while there is nothing wrong with that per se, one gets the impression that he is a somewhat immature individual who is indulged by his relatives, particularly his mother. It seems that Ms. Longus turns a blind eye and a deaf ear to any faults her son might have. She dismisses the problems with Ms. Young as ill based on Ms. Young's instability and tendency toward melodrama. While it may or may not be true that Ms. Young tends to dramatize events, certainly the injuries that she has suffered in the last year are not something that and overwrought imagination dreamed up. Clearly, she has been hurt and it would appear that, even after numerous warnings, the defendant did not stay away from her. As noted, he made threats, even in front of the police officers! If he will talk about hurting someone in the presence of police officers, one shudders to think of what he might do when no one is around. In this writer's opinion, Mr. Longus totally lost his sense of proportion after he became involved with Ms. Young. While he has seemingly been fortunate to have many similar type charges dismissed in the past (both in DC and Prince George's County, Maryland), this writer believes that his aggressiveness is escalating. Incarceration is appropriate, in this writer's opinion, although, according to AUSA Carroll, the victim is only asking that the defendant receive therapy.

**TREATMENT PLAN:**

Counseling (in a secure setting) to counter aggressiveness.

11-FEB-2006 03:30PM FROM-RIVERS UNIT B    2625865511    T-107 P.010/010 F-784

Court Services and Offender Supervision Agency

## RECOMMENDATION:

Incarceration is respectfully recommended.

Respectfully submitted,

Karen McDaniel
Supervisory Community Supervision Officer
(202) 442-1441