SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CRIMINAL DIVISION

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA    :

            v.              :    Case No. F1862-99

GREGORY M. LONGUS, JR.,     :

            Defendant.      :

- - - - - - - - - - - - - - - x

                            Washington, D.C.

                            Friday, September 10, 1999

            The above entitled action came on for a trial before.

the HONORABLE STEPHEN G. MILLIKEN, ASSOCIATE JUDGE, in

Courtroom Number 311.

            APPEARANCES:

                    On Behalf of the Government:

                            MARK CARROLL, Esquire

                    On Behalf of the Defendant:

                            STEVEN JACKSON, Esquire

Deposition Services, Inc.

6245 Executive Boulevard
Rockville, MD 20852
(301) 881-3344

2300 M Street, N.W.
Suite 800
Washington, D.C. 20037
(202) 785-1310



taf

P R O C E E D I N G S

DEPUTY CLERK: On Your Honor's sentencing United

States v. Greg Longus, F1862-99.

MR. JACKSON: Your Honor, Mark Carroll is in front

of Judge Kramer. Brief pass I can get him.

THE COURT: I'll wait on you. It's a complicated

matter, I'm going to take time in it as well.

MR. JACKSON: Thank you, Your Honor, for the

indulgence.

THE COURT: No difficulty. Thank you for your

patience.

MR. JACKSON: Your Honor, I provided you with two

other letters from the Department of Corrections. They were

handwritten notes from two corrections officers.

THE COURT: From Officers Rush, Corporal Rogers,

Officer -- no.

MR. JACKSON: Yes, Your Honor.

THE COURT: Officer Rogers, Corporal Rush, yes, I

have them and I've read them. Mr. Dockney, you can review

those and then talk when it's for Mr. Seeko.

MR. CARROLL: Good morning, Your Honor, Mark Carroll

on behalf of the United States.

MR. JACKSON: Your Honor, for the record, Steven

Jackson on behalf of Gregory Longus.

THE COURT: Mr. Longus, good morning.

2

taf

```
1        MR. LONGUS: Good morning.

2        THE COURT: Counsel, good morning. Mr. Longus is

3   before the Court for sentencing following his admission to

4   the charge of felony threats carrying a 20 year potential

5   sentence. The plea agreement in the case was that if Mr.

6   Longus plead guilty to felony threats the United States would

7   not seek to prosecute him further in connection with the

8   incidents complained around a couple of dates of these

9   charges. The United States also agreed that if Mr. Longus

10  plead guilty the United States would not oppose sentence of

11  probation. What precisely is the sentence you agreed not to

12  oppose?

13        MR. JACKSON: Three years.

14        MR. CARROLL: The complainant in this case, Your

15  Honor, I said I wouldn't oppose three to nine years suspended

16  sentence with probation and that he receive psychiatric care.

17  And I had asked that of the Court because that is what the

18  complainant wanted. The Court was concerned that the

19  defendant might go out and kill her. That's why the Court

20  wanted the study done, but that had been the complainant's

21  interest. She wanted for him to stay completely away from

22  her and she wanted him to seek psychiatric help.

23        THE COURT: And there's a complete denial by Mr.

24  Longus of having sliced her ear in half under circumstances

25  where you believe the evidence powerfully supports that he
```

3

tai

did it.

MR. CARROLL: They still believe that he did it.

THE COURT: And there is minimization of violent and threatening conduct that doesn't leave me very comfortable with the proposal, and I've said that throughout.

MR. JACKSON: Yes, sir.

THE COURT: And that's the reason I did order a mental health evaluation in aid sentencing.

MR. JACKSON: Yeah, I believe I requested that.

THE COURT: And I don't think that report is particularly helpful as mental health professionals struggle to be helpful in predicting future dangers.

MR. JACKSON: Mm-hm.

THE COURT: I also read that there is a concern because of a mismatch on a drawing test that, a geometry problem, that there may be some neurological --

MR. JACKSON: Dysfunction, yes.

THE COURT: The pre-sentence report writer identified a destruction of property issues and a history of arrests which identifies I believe the Prince George's County complained activity as resulting from complaints initiated by the mother of the defendant's fiancé who writes me favorably for Mr. Longus.

MR. JACKSON: And who is here today.

THE COURT: How many people are here for Mr. Longus?

4

taif

1    MR. JACKSON: That whole back row.

2    THE COURT: And I read of a long and strong depth of

3    support from a family that is eminently respectable.

4    MR. JACKSON: Your Honor, may I be heard?

5    THE COURT: Without question, but this is one of the

6    things that makes this hard for me. In the investigation

7    made by a probation officer who's trained to evaluate the

8    circumstances of persons who come before the Court for

9    sentence, and some of this is from interviews with

10   prosecution and some of this is as a result of investigation

11   or conclusions drawn by the probation officer. On January

12   25th, 1999 the defendant kicked in the door and threw a rock

13   through the window of a house where Ms. Young was visiting.

14   MR. JACKSON: Your Honor, what page would that be

15   on?

16   THE COURT: Seven. And this is after the defendant

17   said I'm gonna fuck her ass up or get someone else to fuck

18   her up, in the presence of police officers following arrest.

19   So undeniably there is a threat that the defendant couldn't

20   even control in the presence of law enforcement officers. On

21   3/21/99 according to Ms. Young the defendant grabbed her and

22   cut her ear in half. And there are denials, how could I

23   possibly have dragged her 12 blocks without being seen and

24   there are tremendous denials and there's a fair amount of

25   negative information that's supplied about Ms. Young. This

taf

1   count is going to be dismissed as a part of this plea

2   bargain.

3

4          MR. JACKSON: Yes.

5          THE COURT: It is still undeniable says the

6   probation officer that Ms. Young's ear was split in half, cut

7   with a bottle is the accusation. Defendant also admitted to

8   this writer that he had violated stay away orders which Ms.

9   Young had requested. So clearly these events or how they

10  transpired had this gentleman with that woman away from whom

11  a judge had ordered him to stay. So police officers don't

12  stop threats and that's the count that's admitted because

13  it's undeniable. Everything else is denied and a court order

14  is not enough, and the same time I'm going to be asked and

15  without objection from the United States on a request of the

16  complainant to free this man, order some counseling, maybe a

17  neurological, and I feel like what am I, the biggest dummy.

18  This is a man who's already been ordered by a judge not to

19  have anything to do with the woman and I'm going to order the

20  same thing and expect that somehow there's some magic. Am I

21  saying it when some other judge said it and it didn't mean

22  anything.

23         MR. JACKSON: Well, Your Honor, the mitigating

24  circumstances have occurred since the sentencing, Your Honor.

25  He's been in custody.

         THE COURT: There's been incarceration.

taf

1   MR. JACKSON: For 172 days.

2   THE COURT: I understand.

3   MR. JACKSON: And I believe that acts as a deterrent

4   so he would abide by all court orders and any instructions

5   the Court would bestow upon him. And I believe the fact that

6   he's got the family support, he has gainful employment, with

7   psychiatric treatment he'll be able to get his life back in

8   the right path. Your Honor, in addition, Your Honor, what

9   you've got to consider this, Your Honor, is that it was a

10  relationship between Ms. Andrea Young and my client from a

11  period from October to March when he was going through in a

12  hiatus with his original fiancé because they were having

13  difficulties. In the interim he found a romantic

14  relationship with a woman that he probably acted, he used

15  poor judgment. Your Honor, this man has a loving family that

16  supports him, he has a witness who was going to testify at

17  trial that would give different testimony about who actually

18  hurt or damaged the complaining witness's ear, and it was not

19  my client. My client admitted his guilt to the threats

20  because, in fact, he did do that at a time when being upset

21  because his girlfriend called the police and he was upset and

22  he just exploded in the police car and made those type

23  threats, not thinking or using clear judgment. But, Your

24  Honor, his position is that he never did assault that woman

25  or cut her ear, and he stands fast by that belief, and we've

7

taf

1    got a witness here to testify today that on that day in

2    question that she was assaulted that he saw her, in fact, be

3    assaulted with someone else. At this time, Your Honor, I'd

4    like to call Mr. Victor Wilson.

5

6        MR. CARROLL: I would object to that, Your Honor. I

7    mean he could have gone to trial if he wanted. This was a

8    plea bargain that only gave him 20 years (indiscernible).

9        MR. JACKSON: Your Honor, this is only a sentencing.

10   At this point I think you can take hearsay evidence, anything

11   to better give you an impression about the defendant.

12       THE COURT: I don't have anything more important to

13   do than get this right.

14       MR. JACKSON: Yes.

15       THE COURT: But if I'm going to take testimony and

16   whether or not this gentleman gets a substantial period of

17   incarceration depends on whether or not he or someone else

18   cuts the complainant's ear. It may be a healthy use of time,

19   but I'm certainly not going to hear from one side and not the

20   evidence on the other side.

21       MR. CARROLL: Your Honor --

22       MR. CARROLL: Your Honor, it's the Government's

23   position that had we gone to trial the witness

24   (indiscernible) felt that 20 years exposure for this type of

25   incident was enough. I don't think we should be changing

     horses in midstream (indiscernible).

8

taf

MR. JACKSON: Your Honor, my client's not before

1  this Court for assault with a dangerous weapon, he's before

2  this Court for making threatening statements which he plead

3  guilty to, Your Honor. Our explanation for making the

4  statement was because it was at a time when he was arrested

5  by the complaining witness, after he had numerous times

6  giving assistance and trying to aide this particular woman,

7  and this woman betrayed him. Now, out of form of betrayal he

8  felt distraught, he felt upset. Your Honor, personally in my

9  own experience which has nothing to do with this court, I've

10  been shot by my wife, I know about betrayal. Betrayal causes

11  a person to do, say and do things that are very, you know,

12  damaging to an individual because you don't think that a

13  person that you care for would do something like this, and

14  sometimes it clouds your judgment. And that's what happened

15  in this particular incident, Your Honor. We've got testimony

16  from his fiancé who's willing to testify in a letter that

17  he's been a caring, dutiful father, responsible individual.

18  His sister, his mother all say this about this individual.

19  And may I bring it to the Court's attention that the last

20  criminal offense that he had in connection with the criminal

21  justice system was eight years ago, in 1990, when he did two

22  days. All the other charges he had where he was arrested, he

23  was not convicted on them. The pre-sentence report preparer

24  eludes to the fact that he escaped prosecution. Your Honor,

25

9

FORM FED ® PENGAD • 1-800-631-6989

1    he didn't escape prosecution because he was guilty, there

2    could have been the possibility he was innocent in all of

3    those cases. She made reference to them and they were all

4    with women, all the (indiscernible) were not with woman, some

5    of them were with men as well. In addition, Your Honor, I'd

6    like to bring your attention to where she talks about

7    relationship between him and his fiancé was for nine years.

8    It wasn't nine years, it was 12 years and that's evidenced by

9    the letter that the fiancé wrote to you and she's prepared to

10   testify in open court that their relationship was for 12

11   years and not nine years. And especially where it talks

12   about how immature he is, Your Honor, because he talks about

13   ~~his mother is a person who don't think he's going to do any~~

14   wrong like she's an enabler. Your Honor, my client works for

15   a family business, the family needs his help because on the

16   weekend this is where they make their money, and I think he

17   should be commended that he's willing to forego a formal

18   career to work for a family business. And we go back to the

19   psychological report on page three, Dr. Genese Dumanae, she

20   talks on the third paragraph according to Mr. Longus the

21   incident first resulted from a (indiscernible) with a victim.

22   He indicated he and the victim had previously been involved

23   romantically and he had been selling drugs and giving her

24   money. Your Honor, that's not what my client told the

25   psychiatrist. There's nothing in his record that indicates

10

1  that he ever sold any drugs. All of his previous record

2  charges were for assault, battery and burglary, no drug

3  distribution. I submit to the Court that this is a

4  mischaracterization of what he told the psychiatrist. And in

5  her report she mentions how he, on page -- Court's indulgence

6  -- on page four --

7          THE COURT: What you just said is true with the

8  exception of the arrest on the 28th.

9          MR. JACKSON: I'm sorry, Your Honor?

10         THE COURT: What you said is true with the exception

11  of the arrest on the 28th of February, 1989, possession of

12  cocaine.

13         MR. JACKSON: Yes, it is, Your Honor.

14         THE COURT: Oh, I understand. I read every word of

15  every letter, every report, and you're right it is just a

16  pattern of arrests for assault and property and other crimes

17  in relationship with partners and not always women, there was

18  the destruction of a gentleman's father's windshield to which

19  he eluded. So he has been violent in his own family. In

20  addition --

21         MR. JACKSON: But it was eight years ago, Your

22  Honor, that these offenses occurred with the exception of

23  (indiscernible) prior to that there was an eight year gap

24  where he didn't do anything illegal. He had no contact with

25  any criminal justice system. It was because of the affairs

11

1  of the heart with Adrianne Young that my client got

2  sidetracked. Your Honor, you've got to consider the fact

3  that there is a gap of time here. You also should consider,

4  Your Honor, the fact that this person has a loving and caring

5  family, a support group that most people in the District of

6  Columbia do not have. With a support group in place he's

7  able to fix what's broken. Your Honor, I want you to

8  consider this person's future. He has two children, one of

9  the children is here today in court.

10      THE COURT: And thankfully asleep.

11      MR. JACKSON: Your Honor, I think he's salvaging. I

12  think we should not put him inside an institution where he

13  can be warehoused and become more criminalistic. I think

14  this is a person who has an opportunity to get his life back

15  on track with psychiatric treatment, a supporting family so

16  he can become a responsible individual. If we throw the baby

17  out with the bath water, Your Honor, we have the opportunity

18  of taking this person, putting him with criminals and coming

19  back a very bad person in the community and not correct his

20  behavior. Your Honor, I think rehabilitation is appropriate

21  here as opposed to incarceration. Your Honor, we're going to

22  ask that you place my client on probation with a chance to

23  take psychiatric evaluation and for him to make some form of

24  repayment to the community by doing community services.

25      THE COURT: There is a very strong debate about the

12

taf

1    usefulness of law enforcement intervention and issues of

2    family violence, and there's a very strong position

3    articulated by many advocates for survivors that it is

4    healthy to listen to the voices of people who have been

5    abused. And, Mr. Carroll, it's my understanding that the

6    Government takes the position that in respect of and in

7    recognition of the desire of the complainant to resolve this

8    case around treatment that in the exercise of your

9    discretion, weighing the merits of incapacitation from a

10   community perspective you respect that judgment in this case

11   and in connection with this man and that that is a just

12   result.

13          MR. CARROLL: Your Honor, it's the Government's

14   position that both sides be taken into effect here in

15   comparison, but I would ask the Court to fashion a

16   so that the Court could insure the Court's self the safety of

17   Adrianne Young.  However the Court chooses to fashion that

18   sentence I will defer to the Court.

19          THE COURT: Is the Office of the United States

20   Attorney still experimenting with the use of bell buoys, that

21   is emergency electronic beepers to secure assistance for

22   victims?

23          MR. CARROLL: I don't know of that at all, Your

24   Honor.

25          THE COURT: Ms. Ament, do you know?

taf

1    MS. AMENT: I believe we are, Your Honor, but I

2  can't be sure (indiscernible).

3    THE COURT: If I follow the combined advice of the

4  parties here and respect the earnest prayers of family and

5  the voice of Ms. Young I can't think of anybody better

6  positioned than Ms. Young to be wearing that device. And

7  that's what makes this sentencing hard. Is there anything

8  else that I should know before I actually sentence the

9  gentleman?

10    MR. JACKSON: Your Honor, my client would like to

11  say something.

12    THE COURT: And he's entitled. And I'm assuming

13  ~~that while this case does not require my delaying or taking~~

14  any other information from Ms. Young, it doesn't require my

15  hearing any testimony, and you, sir, make the judgment that I

16  should not have a contested trial on the counts to be

17  dismissed --

18    MR. JACKSON: Yes.

19    THE COURT: -- because I'm not going to hear one

20  side I can tell you that.

21    MR. JACKSON: Yes, Your Honor.

22    THE COURT: All right. Then, Mr. Longus, before I

23  sentence you is there any remark you would make to help me

24  arrive at a fair sentence, anything at all that you would

25  tell me, sir?

taf

MR. LONGUS: Your Honor, first, I would like --

1    excuse me, I'm a little, I'm a little nervous -- first, I
2    would like to just say that I'm sorry to the Court and I'm
3    sorry to the community and Adrianne Young. I have spent
4    almost six months in central detention facility and I'm just
5    sorry for what I did and I just would like to have another
6    chance in society. I just made the mistake and I'm sorry.
7
8         THE COURT: It is the judgment of the Court, sir,
9    that you be sentenced to 80 months to 20 years and I suspend
10   execution of all but one year, below which I could not in
11   conscious go on these facts. In respect of the combined
12   wisdom of counsel and all I have heard and read and knowing
13   that there are those humans who will build out of flesh and
14   blood to support for Mr. Longus that will give protection to
15   the community I order a period of probation, and I order a
16   period of probation for five years which is as much as I can
17   order. You will do the year to the day because on a split
18   sentence the Judge controls the release date. And when
19   you're released from prison no one, and family take heed of
20   this, no one in the Department of Corrections, because they
21   won't care will tell you that you begin the probationary part
22   of a split sentence, and you need with the support of your
23   lawyer and family and your own memory to come to this
24   building, room 4206 and enroll yourself on probation
25   supervision. The conditions of probation are the same in

15

taf

1    every case, the general conditions, and they apply to you,

2    and they are that you obey the law. That means you don't get

3    high on illegal drugs, it means you don't do anything

4    assaultive or threatening, you also have to meet with your

5    probation officer when the probation officer says that he or

6    she wants to see you. You must report any change of address

7    so that you are available through the probation officer

8    whenever I or anybody else would like to see you. I order

9    that there be a neurological examination and that you receive

10   mental health counseling in the discretion of a probation

11   officer. If you are employed and you have health insurance

12   you can arrange that privately. If the probation officer

13   directs you to a certain individual to see and to explore in

14   your past how these behaviors have arisen then you will do

15   that. Additionally, you must enroll in and successfully

16   complete the domestic violence intervention program. If you

17   are employed they'll charge you, I believe it's $10 a

18   session. It will be somewhere between 18 and 24 weeks in

19   duration, and that is so you will learn about behaviors,

20   about exercise of power and control when there's something

21   you want and you fell like just taking it what's stops people

22   in a civilized community from just using physical force to

23   get what they want or punish what they don't like. I order

24   that you stay away from Adrianne Young, that means no contact

25   by telephone, in writing, directly or indirectly. If she

taf

1  calls you call your lawyer. If you see her on the street you

2  turn around and go another direction. If I find you have so

3  much as written a postcard to her even to say I'm sorry,

4  because that's a whole part of the pattern of violence I'm

5  going to give you those 20 years to the second because I'm

6  not going to wait until you run across her and threaten or

7  hurt her or any other person. The minimization, the denial,

8  the pattern of destruction of property, the violence in the

9  family, the violence in relationships, all of the tell tale

10  signs are red flags all over this courtroom. And don't deny

11  it in family and don't deny it in relationships, and know for

12  this gentleman's children and know for anyone who would be in

13  relationship with him that there are dangers in the road, and

14  the chances of a child of one who witnesses violence in

15  relationship and in the home becoming either a batterer or a

16  victim are dramatically increased. We are learning these

17  things, and don't shove them under the rug.

18        MR. CARROLL: Your Honor, during the probationary

19  period the Government would ask that he be weekly tested for

20  alcohol and drugs.

21        THE COURT: Granted. I write that order always,

22  drug testing in the discretion of the probation officer, and

23  that includes alcohol. I check both boxes. This piece of

24  paper, the last time a judge signed a piece of paper designed

25  to keep Mr. Longus peaceful we end up here today. That piece

17

FORM FED ® PENGAD • 1-800-631-6989

taf

1    of paper is only as effective as I and family and prosecutor

2    and defense attorney on a continuing basis make it. I think

3    you need to get in touch with Ms. Clark in your witness

4    assistance unit and have her contact Ms. Young and alert her

5    to what this sentence is, what this gentleman's release date

6    is, what the conditions are, help her in the design of a

7    safety plan, and I think you need to find out or have

8    somebody in your office put in a tickler system a contact

9    with a probation officer 24 hours after his release date to

10   see if he got to room 4206, because if he doesn't I expect a

11   motion to not only ask that his probation be immediately

12   revoked and that he do the 20 years, but I expect a request

13   for a bench warrant, because if Mr. Longus does anything but

14   walk from a correction facility into room 4206, that's if he

15   decides well gee I want to have a family reunion or I want to

16   see my kids or I want to do this or I want to do that, if

17   within 24 hours of his release he isn't properly registered

18   with probation authorities then he's already violated my

19   order and I'm not going to trust him to the rest of it, and I

20   intend to have him arrested and he can do the time. The

21   court costs are in the amount of $100. I also order,

22   although I'm not hearing the child support case and won't

23   pick any amount, but just as a demonstration of lawful

24   behavior and responsibility and relationship I order that Mr.

25   Longus pay lawful child support, whatever that is, whether

taf

1   under court order or privately. So it's a long order, seems

2   very complicated, it's designed to make sure you are sober,

3   you don't have any neurological problems, you are in

4   counseling and you learn about dynamics of violence so the

5   community will be safe and those with whom you're involved

6   will be safe. So the rest of it all it says, in addition to

7   reporting to a probation officer, is that you do what working

8   people do, you go to work, you be a father, you support your

9   children and you leave at peace with your neighbors. Any

10  other matter I should address immediately?

11          MR. CARROLL: Not from the Government, Your Honor.

12          THE COURT: Mr. Longus, do you understand everything

13  that has happened and all of this sentence?

14          MR. LONGUS: No, not all of it.

15          THE COURT: All right. We need to get it straight

16  before we break because I'm going to hold you to it to the

17  letter. I think your sister may be helpful to you because

18  she knows law enforcement procedures and she may be able to

19  help you explain those responsibilities and she may have the

20  kindness to see you through this judiciary square area when

21  you are released. But tell me what it is that you don't

22  understand.

23          MR. LONGUS: The whole sentencing split thing that

24  you just said I don't understand it.

25          THE COURT: I give you 80 months on the bottom to 20

19

1    years, that's the maximum sentence. I suspend execution of

2    all but one year. That means you do a year following which

3    you're on five years of supervised probation. You will be

4    released one year from the date you were first detained.

5    That date is actually right on the face of the jacket.

6        MR. JACKSON: It's 172 days ago.

7        THE COURT: Do you have the jacket?

8        MR. CARROLL: March 21ˢᵗ, Your Honor.

9        THE COURT: So on March 21ˢᵗ, 2000 you should be

10   released, and then you report to probation to begin this

11   therapeutic sentence that is both restorative and

12   controlling. Is there any other question you have about this

13   sentence?

14       MR. LONGUS: No.

15       THE COURT: And I thank you for asking, because it

16   is important that you understand it, because in the final

17   analysis of the success of this sentence will totally depend

18   on you. I will either be the person who supports your

19   treatment and freedom or if you don't follow this course I

20   will jail you, because we have a history of behaviors, past

21   court orders, stay aways, there's all that water under the

22   bridge, and it would not be unjust for me to give you 80

23   months to 20 years today. Your family, these lawyers have

24   convinced me that I should try this, and I am very

25   uncomfortable, be cause I think your behavior is going to be

taf

1    hard to change, and that year is to tell you just how

2    seriously I take it and prepare yourself to make this work.

3    Thank you very kindly --

4        MR. JACKSON: Thank you, Your Honor.

5        THE COURT: -- each of you for the attention and the

6    time you've taken to be here. Thank you.

7        MR. CARROLL: Have a nice weekend, Your Honor.

8        THE COURT: Yes, sir.

9        MR. JACKSON: Thank you, Your Honor.

10       THE COURT: Thank you very kindly, sir.

11       MR. JACKSON: Have a nice weekend.

12       THE COURT: And you as well.

13       MR. JACKSON: I'm going to try, Your Honor.

         (Thereupon, the matter was concluded.)

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Tricia A. Fritz, a transcriber, do hereby certify that I transcribed the proceedings and the testimony adduced in the matter of <u>UNITED STATES v. GREGORY M. LONGUS,</u> <u>JR.,</u> Case No. F1862-99 in said Court, on the 10th day of September, 1999.

I further certify that the foregoing pages constitute the official transcript of said proceedings as transcribed from audio recording to the best of my ability.

In witness whereof, I have hereto subscribed my name, this, the 30th day of November, 2001.

Tricia A. Fritz

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CRIMINAL DIVISION

UNITED STATES OF AMERICA    :

        v.    :    Case No. F1862-99

GREGORY M. LONGUS, JR.,    :

        Defendant.    :

- - - - - - - - - - - - - - - x

          Washington, D.C.

          Tuesday, July 31, 2001

    The above entitled action came on for a trial before

the HONORABLE STEPHEN G. MILLIKEN, ASSOCIATE JUDGE, in

Courtroom Number 221.

    APPEARANCES:

        On Behalf of the Government:

            KEVIN (INDISCERNIBLE), Esquire

        On Behalf of the Defendant:

            STEVEN JACKSON, Esquire

*Deposition Services, Inc.*

6245 Executive Boulevard
Rockville, MD 20852
(301) 881-3344

2300 M Street, N.W.
Suite 800
Washington, D.C. 20037

taf

# P R O C E E D I N G S

(Portions of the following proceedings were
indiscernible as indicated in the transcript.)

DEPUTY CLERK: Your Honor, with regard to the case
of the United States v. Gregory M. Longus, the case number is
F1862-99. Parties in the matter step forward. Counsel,
please identify themselves for the record.

MR. JACKSON: Good morning, Your Honor, for the
record, Steven Jackson on behalf of Gregory Longus, in the
back and he's coming forward.

THE COURT: This matter is here for the gentleman's
allocution.

GOVERNMENT COUNSEL: Good morning, Your Honor, Kevin
(indiscernible) for the United States standing in for Mark
Carroll. The case was originally his.

THE COURT: Thank you.

MR. JACKSON: At this time may I respectfully
request whether or not the Court has received a copy of
defendant's sentencing memorandum?

THE COURT: I read every word of it, yes, sir.

MR. JACKSON: Well, Your Honor, we ask that you
would adopt the recommendations (indiscernible) supervised
probation.

THE COURT: And I heard your wrap up remark earlier
and I've read your even more considered remarks and the case

2

taf

1    was continued because Mr. Longus was not really ready to

2    speak his peace after the contested probation revocation

3    hearing so I continued sentencing to today. The gentleman

4    was sentenced originally to 80 months to 20 years, he was

5    placed on a supervisory probation under a split sentence

6    after serving three and after being given an opportunity to

7    continue on with probation this first offender who had

8    committed a most heinous offense including ripping a woman's

9    ear off with a broken bottle, and that I have on the

10   detention hearing. He plead to the threats charge, the

11   threat to her life committed in the presence of the police

12   officers who were taking him away. After initially taking a

13   revocation hearing and being permitted to return to probation

14   supervision with a clear explanation of his responsibilities

15   he did complete the domestic violence intervention program,

16   but otherwise failed with the technical requirements. And

17   the (indiscernible) the defendant that he has not been proven

18   to have reoffended. I'm very clear on the fact

19   (indiscernible) from A to C, pre and post conviction. Mr.

20   Longus, this is your opportunity to tell me anything you

21   think I should know before I sentence you for any period of

22   time or split or probationary result up to 20 years

23   incarceration.

24        MR. LONGUS: (Indiscernible.)  I didn't understand,

25   I thought that Mr. Jackson was asking for a continuance as

3

taf

1  far as me saying what I had to say. I have a drug problem

2  and I just would like to get some help as far as my drug use,

3  and when you told me (indiscernible), when you told me to

4  obey your orders and the sentencing guidelines I don't really

5  understand what you meant as far as me I completed the

6  domestic violence program, and I (indiscernible) and me

7  paying the $100 Victims of Crime fund, and I thought that

8  that was what you wanted me to do, and then after I had done

9  all of that then I enrolled myself into school as far as Shaw

10 Academy job training, and I had enrolled myself into

11 Transportation Express with the commercial drivers as far as

12 bus or tractor trailer. And during all this time I was, I

13 was working, I was going to school, I was taking my domestic

14 violence class and going to Shaw Academy and it just was a

15 little bit too much for me to handle all at one time and I

16 just, I got off the wagon and started using drugs, and I

17 don't, I really don't think that I deserve any jail time,

18 Your Honor. I think that I, I'm really sorry for what I did

19 as far as using drugs and I was obeying what I thought that

20 was, I thought I was doing right far as my probation, far as

21 trying to get a career and job placement and everything, and

22 I was taking care of my kids. My two boys are seven and 11.

23 I would like to be a father to them and raise them. I don't

24 know what else to say, Your Honor, (indiscernible). I'm

25 sorry and I need help with my drug problem.

4

taf

1          MR. JACKSON: Your Honor, we're asking that you

2    place him in a drug treatment facility.  (Indiscernible) the

3    things that he did do.  He entered and completed the domestic

4    violence program (indiscernible) anger management.  He did

5    satisfy the Court's requirement.  He did not comply with

6    staying away from any drugs.  He has an addiction and he

7    admits this.  We feel the community is better served

8    (indiscernible) program to address the substance abuse.

9

10         GOVERNMENT COUNSEL: May I address the Court, Your

11   Honor?

12

13         THE COURT: You may have the last word in reply,

14   yes, sir.

15

16         GOVERNMENT COUNSEL: Your Honor, I am a little bit

17   puzzled (indiscernible) so I defer to the Court's superior

18   knowledge of the underlying case over which you presided and

19   also the history of the defendant's sentence.  My education

20   basically has been developed through a review of the court

21   jacket and also a review of our (indiscernible), but my

22   review of the court jacket indicates that the show cause

23   order that was issued most recently in this case indicated

24   that there was a failure to keep appointments repeatedly, the

25   illegal use of drugs, but also a failure to enter a domestic

1    violence program.

2

3          THE COURT: That was corrected by the probation

4    officer, sir.

5

taf

GOVERNMENT COUNSEL: Okay.

THE COURT: -- on proof of a successful completion

of that program.

GOVERNMENT COUNSEL: There was also a failure to pay

$100 in crime fee, was that also corrected, Your Honor?

THE COURT: I was interested to hear the defendant

say that because I don't recall that from the earlier

hearing, and the file record in so far as I can see does not

show proof of that payment.

MR. LONGUS: Your Honor, I have not paid that $100.

THE COURT: Then I'll proceed as if the defendant

did.    I have no record of that, but I'm not going to delay

the sentencing yet again.

GOVERNMENT COUNSEL: I also would note, Your Honor,

that (indiscernible) is contested as well (indiscernible) the

fact remains that I believe that the show cause order was

issued earlier this year did indicate that it took many

attempts for the defendant, there were many failure to appear

and we ask that with regard to a domestic violence program

that if he did indeed complete that that's fine, that won't

be a part of my allocution, but he has also, and I don't know

(indiscernible) myself, but there was also a reference in

these show cause orders of his failure to report for CIT drug

assessment and failure to report for (indiscernible) drug

counseling.    This is a defendant, Your Honor, who got the

6

FORM FED ⊕ PENGAD - 1-800-631-6989

taf

1    benefit of the doubt from this Court, and is a person who as

2    the Court has already noted severely injured a female by

3    breaking a broken bottle against her skull, against the side

4    of her head.    It's someone who plead guilty to an offense

5    which carries a 20 year maximum penalty, felony threats, and

6    has really gotten the benefit, Your Honor, of every break

7    (indiscernible).    He served less than a year in jail by my

8    calculations, he was sentenced on September 10th of '99, he

9    was out, he was sentenced as to which all but a year was

10   suspended, he was out by April of 2000 and the only reason I

11   know he was out by April of 2000 is the record show that he

12   started failing to report for appointments with his probation

13   officer, and then in (indiscernible) aspects he has failed to

14   comply with almost everything that has been expected of him

15   in the probationary term.    This is a person who does not

16   deserve to be further on probation.    The community is ill

17   served by any sort of notion that they would be benefitted by

18   his remaining on the street.    And his continued defiance of

19   all probation requirements I think speaks poorly of him and

20   speaks poorly of the system if he is to be put back in that

21   probationary process.    And once again you give him the chance

22   to fail utterly (indiscernible).    And so we would ask that

23   the Court decline to follow the defense's recommendation and

24   sentence the defendant (indiscernible) lengthy term of

25   incarceration taking into account the severity of the offense

7

taf

1    that he committed and his defiance of the Court and the

2    probation office in the time since he was released from jail.

3            THE COURT: Thank you kindly.

4            MR. JACKSON: Briefly, Your Honor, may I respond?

5            THE COURT: That's the last sentence, and then I'll

6    deliver --

7            (This portion of the tape was indiscernible.)

8            THE COURT: That is the repetition of arguments

9    previously made and I have your final argument, and the

10   Government is right about the split on the year as opposed to

11   three, and you're right about some of the compounding

12   circumstances which moves me to allow the gentleman a better

13   opportunity in the spring of this year. When was she abused

14   around the substance abuse horribly. It would not have been

15   unjust to give this gentleman 20 years at the original

16   sentencing because of the nature of the crime, and I'm

17   satisfied that he made some adjustment to probation to

18   reflect some of the obligations and has not been proven to

19   have reoffended other than through the substance abuse. It

20   is the judgment of the Court that the revocation of

21   probation, Mr. Longus, be sentenced to five to 15 years

22   incarceration. I order that he make proof of the payment of

23   $100 and, sir, if you go to the finance office and find he

24   has paid that $100 I'll mark the judgment and commitment

25   order paid, if not, he still has that obligation and they

8

won't parole him until it's paid. Thank you, step back with

the deputy, sir.

MR. LONGUS: Thank you, Your Honor.

(Thereupon, the matter was concluded.)

FORM FED    PENGAD · 1-800-631-6989

# C E R T I F I C A T E

I, Tricia A. Fritz, a transcriber, do hereby certify that I transcribed the proceedings and the testimony adduced in the matter of UNITED STATES v. GREGORY M. LONGUS, JR., Case No. F1862-99 in said Court, on the 31st day of July, 2001.

I further certify that the foregoing pages constitute the official transcript of said proceedings as transcribed from audio recording to the best of my ability.

In witness whereof, I have hereto subscribed my name, this, the 30th day of November, 2001.

Tricia A. Fritz