SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CRIMINAL DIVISION

- - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

          v.                    :    Case No. F1862-99

GREGORY M. LONGUS, JR.,         :

          Defendant.            :

- - - - - - - - - - - - - - x

                          Washington, D.C.

                          Tuesday, July 24, 2001

          The above entitled action came on for a trial before

the HONORABLE STEPHEN G. MILLIKEN, ASSOCIATE JUDGE, in

Courtroom Number 310.

          APPEARANCES:

          On Behalf of the Government:

                CARRIE NELSON, Esquire

                MIA CHUNG, Esquire

          On Behalf of the Defendant:

                STEVEN JACKSON, Esquire

          On Behalf of C. Sosa:

                JENNIFER LEE, Community Supervision Officer

## Deposition Services, Inc.

6245 Executive Boulevard
Rockville, MD 20852
(301) 881-3344

2300 M Street, N.W.
Suite 800
Washington, D.C. 20037
(202) 785-1110

FORM FED ® PENGAD · 1-800-631-6989

# TABLE OF CONTENTS

Waiver of direct examination of Jennifer Lee
Closing argument on behalf of the Defendant

GOVERNMENT'S WITNESSES

Jennifer Lee
(By Mr. Jackson)

|  | Direct | Cross | Redirect |
|---|---|---|---|
| | 6 | | |

Page
6
20

reason

FORM FED  PENGAD · 1-800-631-6989

1    (Thereupon, the matter was concluded.)

2    DEPUTY CLERK: Your Honor, this is a recall, United

3    States v. Gregory Longus, F1662-99.

4    MR. JACKSON: Once again, Your Honor, good morning,

5    Steven Jackson on behalf of Gregory Longus. Our

6    representation for why he wasn't here at 9 o'clock, he was

7    down at C-10.

8    THE COURT: That may easily be the case and I

9    appreciate --

10    MR. JACKSON: At this time we ask that you vacate

11    the bond.

12    THE COURT: Quashed immediately.

13    MR. JACKSON: Thank you.

14    MS. LEE: Good morning, Your Honor, Jennifer Lee,

15    Community Supervision Officer with C. Sosa.

16    THE COURT: The violation report is lengthy.

17    MS. NELSON: Your Honor, I have one correction with

18    that. With exception to everything else the domestic

19    violence he has completed and I do have a copy of his

20    completion successfully, but everything else remains the

21    same.

22    THE COURT: This is a case of extreme violence.

23    That being here in relation to the missed appointments and

24    the illegal use of drugs --

25    MR. JACKSON: Well, Your Honor --

4

FORM FED ® PENGAD • 1-800-631-6989

1  THE COURT: -- but that pattern behavior has been

2  rather extensive on the violation report.

3  MS. LEE: Your Honor, it's been very consistent.

4  I've been trying to work with Mr. Longus and he has not been

5  at the office since to get the new referral for drug testing.

6  THE COURT: Since when?

7  MS. LEE: The last office visit that I had with him

8  was June 5th.

9  THE COURT: And are the allegations contested or

10 conceded?

11 MR. JACKSON: They're contested, Your Honor.

12 THE COURT: Come forward to be sworn then.

13 DEPUTY CLERK: Raise your right hand.

14                    JENNIFER LEE,

15 having been called as witness for and on behalf of the

16 Government, and having been first duly sworn by the Deputy

17 Clerk, was examined and testified, as follows:

18 DEPUTY CLERK: Thank you.

19                  DIRECT EXAMINATION

20 BY MR. JACKSON:

21 Q  Good morning, Ms. Lee.

22 THE COURT: Before you (indiscernible) may I ask

23 that you state your name for the record.

24 THE WITNESS: Jennifer Lee, Community Supervision

25 Officer for C. Sosa.

5

FORM FED ® PENGAD · 1-800-631-8989

taf

1

2      (indiscernible)

3

4

5      accurate to the best of your knowledge and belief?

6

7         THE COURT: (Indiscernible) wish to go forward on

8      direct examination.

9

10        MS. NELSON: No, Your Honor.

11        MS. NELSON: Yes, Your Honor.

12        THE COURT: (Indiscernible) representations true and

13     MR. JACKSON: Yes, Your Honor. Thank you.

14                    CROSS EXAMINATION

15        BY MR. JACKSON:

16     Q   Good morning, Ms. Lee.

17     A   Good morning.

18     Q   Drawing your attention to a show cause order filed

19     on July 3rd requesting us to appear here today did you

20     indicate that my client failed to make a scheduled

21     appointment on 4/26/01?

22     A   Okay, for July 3rd, you said?

23     Q   Yes.

24     A   He was scheduled for July 2nd.

25     Q   No, no, no, I'm talking about in the show cause

6

THE COURT: Are you familiar with the violations

(indiscernible) 2001?

THE WITNESS: Yes, Your Honor.

THE COURT: (Indiscernible) representations true and

THE WITNESS: Yes, Your Honor.

THE COURT: You reserve for redirect?

1    violation that you prepared. You prepared it on the third

2    for today's date, is that not correct?

3    A    Correct.

4    Q    Okay. And on that particular report you stated

5    that my client failed to make a scheduled appointment on

6    April 26th?

7    A    Correct.

8    Q    Okay. Now, did my client call you on April 20th

9    and ask that this date be rescheduled?

10    A    Your client called me on April 19th to ask to be

11    rescheduled for 4/26, however, on that date he did not show

12    up.

13    Q    Was there any communication saying that he wanted

14    to reschedule that April 26th date?

15    A    He didn't show up on April 26th and he did not call

16    me on April 26th.

17    Q    Was anybody in your office notified that he made an

18    effort to try to contact you?

19    A    There was no one.

20    Q    When was the last time in April you had contact

21    with the defendant?

22    A    June 5th, as I stated earlier, was our last office

23    visit.

24    Q    June 5th?

25    A    Yes, that was the last office visit.

FORM FED  PENGAD · 1-800-631-6989

taf

1    Q    In your office you prepare a report, is that

standard procedure?

2

3

4    A    Correct.

5

6

7        MR. JACKSON: Your Honor, may I approach?

8        THE COURT: Go ahead.

9        BY MR. JACKSON:

10   Q    I'm showing the defendant a copy of the

(indiscernible). Is this the (indiscernible) probation

report that's prepared in your office?

11   A    Yes.

12   Q    Okay. Is this your signature?

13   A    Yes, it is.

14   Q    And do you see a date on this form?

15   A    What date is that?

16   Q    In this box what date does this indicate?

17   A    May 4th.

18   Q    May 4th. Your testimony the last time you saw him

was May 5th, correct? Is that correct?

19   A    I said it was May 24th.

20   Q    Is it not your testimony that you --

21   A    I have a correction.

22   Q    Okay.

23   A    My mistake. May 24th was the last, was the office

24   visit he did drop in, C.S.O., I was not there so he was

25   scheduled to come back on June 4th.

8

1   Q    Okay. So there was somebody in your office that

2   had contact with him and did reschedule it?

3   A    Correct.

4   Q    Okay. So it's not like you said before?

5   A    My correction, my mistake.

6   Q    Okay. So there is a possibility that he did

7   contact you in April, your office?

8   A    He, he came in on the 24th, yes, and he was

9   scheduled to come back on 6/4.

10  Q    There's a possibility by your representation that

11  people contact your office and that you might not be aware of

12  it, is that not your testimony?

13  A    Correct, but I always ask him to leave a message on

14  my recording machine.

15       MR. JACKSON: Moving on down the line, Your Honor.

16       BY MR. JACKSON:

17  Q    Now, also in this report you indicated that there

18  were several positive tests for cocaine.

19  A    Correct.

20  Q    Is that your testimony?

21  A    Yes.

22  Q    At any time did you challenge the test results?

23  A    What is that?

24  Q    Did you make a challenge from the test results?

25  Was a challenge made on the test results submitted in your

9

report?

1  A    I scheduled a CIT drug assessment for him, yes.

2  Q    Not the question.  The question was a challenge

3  made of any positives or negatives that came out on this

4  report?

5  A    Positive came out in this report.

6  THE COURT:  The gentleman's asking whether or not

7  you on your own initiative contacted a chemist to challenge

8  the results of the drug testing or did you simply accept the

9  test results as reported to you?

10  THE WITNESS:  I simply accepted, Your Honor.

11  THE COURT:  Okay.  Now, on that subject the

12  gentleman was required to report in April, May and June, did

13  he have any failures to report at all?

14  THE WITNESS:  Your Honor, are we talking about for

15  the drug test results?

16  THE COURT:  I have a copy of the drug tests before

17  me --

18  THE WITNESS:  Yes, Your Honor.

19  THE COURT:  -- (indiscernible)?

20  THE WITNESS:  Yes, Your Honor.  He was suspended on

21  December 20th, he was suspended on 4/20 and he was suspended

22  on June 18, and in order to be suspended you have to be

23  terminated twice in a row.

24  THE COURT:  So that means that looking at the face

25  

10

1    of this report that the gentleman went for drug testing and

2    either gave an insufficient quantity of urine for analysis or

3    tested positive for cocaine or he failed to report

4    altogether?

5

6    altogether, 'cause on the, on the form it is indicated did

7    not report.

8

9         THE COURT: There was never a time in the history of

10   drug testing from December of 2000 to the present in which

11   the gentleman went for a drug test and was negative for all

12   substances, is that true?

13   showing, indicating here on the record.

14        THE COURT: You may continue your cross examination.

15        MR. JACKSON: Thank you, Your Honor.

16             CROSS EXAMINATION CONTINUED

17             BY MR. JACKSON:

18        Q    Did my client at any time tell you that he was

19   taking certain medication?

20        A    I, he may have indicated at one point.

21        Q    He may have indicated.  Do you recall the type of

22   medication he said he was taking?

23        A    Correction, I always told him that if he is he

24   needs to bring document to me which he never did, and that he

25   needs to bring that to the attention of the drug testing

THE WITNESS: Your Honor, he failed to report

THE WITNESS: Yes, Your Honor, that's what it's

11

unit.

1    Q    The question is did he tell you that he was taking

2

3    medication?

4    A    Yes.

5    Q    Okay.   And you're not a chemist, are you?

6    A    No, I'm not.

7    Q    Okay.   You also addressed the issue about the

8    defendant's failure to report to the CIT drug assessment on

9    4/30 and 3/26.

10   A    Correct.

11   Q    In fact, he met with you --

12        THE COURT:   Bare with me a second while you

13   formulate the question.

14        MR. JACKSON:   Yes, Your Honor.

15        THE COURT:   Thank you.   Excuse me for interrupting.

16        MR. JACKSON:   Okay.

17        THE COURT:   Resumption of cross examination.

18        BY MR. JACKSON:

19   Q    You are aware that Mr. Longus is attending the Shaw

20   Program for job placement?

21   A    Yes.

22   Q    Okay.

23        MR. JACKSON:   Your Honor, may I approach the

24   witness?

25        THE COURT:   You may.

12

BY MR. JACKSON:

1    Q    Are you familiar with the B&W Stat Laboratory which

2    is affiliated with the Shaw Program?

3    A    No, I'm not.

4

5    Q    You're not.  Okay.  Could you read to the Court

6    what this document states at the top.

7    A    B&W Stat Laboratory, patient's name Gregory Longus.

8    Q    And the address?

9    A    Where is it, 3104 Georgia Avenue, NW.

10   Q    And can you tell what date this test results are?

11   A    4/12.

12   Q    And what are the results?

13   A    Negative.

14   Q    Okay.  And in conjunction with this test was it

15   part of the procedure for the Shaw Program to make the

16   applicants, candidates, residents submit to a drug test?

17   A    Could you repeat the question.

18   Q    If you know whether or not it was a procedure for

19   the probation program, the Shaw Program, which is the

20   training program to require the defendants, the residents to

21   submit to random drug tests?

22   A    No, I do not know that.

23   Q    Okay.  You don't know that.  And is this the drug

24   test that you've just seen?

25   A    I've just seen it and I have a request for

documentation. I have never seen it.

1    Q    But it is documentation, would you accept this as

2    documentation?

3    A    Yes, for today.

4    Q    Okay. And it says negative?

5    A    Correct.

6    Q    According to your report you stated that on 4/6 he

7    tested positive and on 4/13 he did not report.

8    MR. JACKSON: Court's indulgence.

9    THE COURT: Report reflects positive on April 6th,

10   failure to report on April 13th.

11   MR. JACKSON: Yes.

12   THE COURT: And failure to report on April 20th. As

13   a result the drug testing was suspended.

14   BY MR. JACKSON:

15   Q    You are aware that Mr. Longus is entering into a

16   transportation management program where he's trying to get

17   his CDL license?

18   A    I'm not fully aware of what's going on with Mr.

19   Longus 'cause he is not complying with me. I don't know.

20   He's not giving me information. I've always indicated to him

21   that whatever he's doing out there give me verification,

22   employment, let me know what is going on, but I don't know.

23   Q    Well, did you receive any correspondence from the

14

Transportation Management program?

1    A.    No.

2    Q    No fax, no telephone calls?

3    A    No, sir.

4    Q    On June 19th, 2001 did Mr. Longus hand you a letter

5    stating that he was enrolled into the Shaw (indiscernible)

6    Job Training Academy?

7    A    June 19th?

8    Q    Ms. (Indiscernible) Jenkins, self-sufficiency

9    specialist.

10    MR. JACKSON: Your Honor, may I approach?

11    THE COURT: You may.

12    THE WITNESS: I don't have a copy. Did he fax it?

13    BY MR. JACKSON:

14    Q    One was faxed to your office and my client

15    presented it to you.

16    A    Okay.  This is recent.

17    Q    What's the date on the letter?

18    A    June 19.  I have been working with Mr. Longus for a

19    long time.  He has just on June 19 presented something.

20    Q    So he did present something.  He did inform you

21    that he wasn't working?

22    A    His, the person here, yes, had faxed this copy, but

23    it's very recent that I have been notified of what is going

24    on with him.

25

15

2    Q   So it's safe to say that you had this documentation

3   that he was gainfully seeking employment and he was testing?

4   The truth of the matter is that you've got this bias against

5   Mr. Longus, do you?

6    A   No.

7    Q   And every time that Mr. Longus try to make an

8   effort to comply with your requests you have this prejudged

9   opinion about what he's doing, don't you?

10    A   No.

11    Q   Has there ever been a time when Mr. Longus has

12   tried to contact you and explained his reasons for not making

13   these drug tests?

14    A   Let me say something --

15    Q   Just answer the question.

16    A   Mr. Longus -- what was that?

17    Q   Would you answer the question?

18    A   Could you repeat the question?

19    Q   Has there ever been a time that Mr. Longus tried to

20   contact you to explain why he couldn't take the drug test?

21    A   Yes.

22    Q   Okay.  And in the times that he called you did you

23   ever reschedule it?

24    A   I rescheduled visits with him, but it's very hard

25   for me to contact him.

    Q   Okay.  How many times have you rescheduled visits

16

FORM FED ● PENGAD • 1-800-631-6989

taf

with him?

1    A    I can say enough that any time he has tried to call

2    me I try to return his call.

3    Q    So how many times would you say, one, two, three,

4    five, six?

5

6    A    Six, seven.

7    Q    Okay. Seven times he's called you to reschedule.

8    So it wasn't a wilful, intentional –

9    A    No, no –

10   Q    -- failure to appear for the test, it was because

11   he was trying to reschedule it, correct?

12   A    Correct, no. No, no, no.

13   Q    Well, explain. Please explain. -- - - -

14   A    He calls me to let me know that he can not make it

15   for the visit to reschedule. We manage to talk, reschedule

16   and he doesn't call back and I can't get ahold of him.

17   Q    So it's safe to assume that there is contact with

18   you?

19   A    There is contact at his convenience.

20   Q    Okay. How many phone numbers do you have of Mr.

21   Longus?

22   A    I have Mr. Longus's home phone number where he says

23   he was residing with his mother. Then he has called and

24   contact me and said he is homeless, then he calls me and said

25   he is now -- well, these are all, he left messages and I

17

FORM FED ● PENGAD • 1-800-631-6989

taf

1   recorded and then I spoke to him recent at that time back in

2   June where he indicated that he is going to live with his

3   uncle in Maryland.

4   Q   But there has been contact made?

5   A   What is that?

6   Q   As a case worker is it your responsibility to

7   investigate, to verify phone numbers and addresses?

8   A   Yes, and I --

9   Q   Did you ever verify phone numbers and addresses?

10  A   That's why I needed contact with him because

11  anytime a client resides in a different state we need to do

12  an interstate compact and I need to make contact with him

13  which I could not.

14  Q   So you never verified whether he lived in Maryland

15  or not?

16  A   I contacted and spoke to his mom, and his mother

17  said that well he's not residing with me, but then he's

18  welcome at my home and at the same time he's staying at two

19  different places so you can say whichever one you want.  He

20  is with his uncle in Maryland or he could be with me.  And I

21  said that's no problem I just need a notarized letter

22  indicating.

23  Q   But she did tell you that he was residing with her

24  on Edgewood Place?

25  A   I don't know exactly where --

18

```
ta:
```

1    Q    But he was residing with his mother, she did say

2    that?

3    A    She's not clear on that. That's why I said that he

4    needs to bring a notarized letter and if the only time I can

5    meet with him is today then bring the letter here to show,

6    notarized letter of where his residence is.

7    Q    Your last contact with Mr. Longus was on June the

8    4th, is that correct?

9    A    Correct.

10    Q    And at that time did you ask him for a notarized

11    letter?

12    A    What is that?

13    Q    June 4th.

14    A    I informed him to contact me back because he was

15    always in Maryland, that was the problem.

16    Q    Now the question was the last contact you had with

17   Mr. Longus was on June 4th.

18    A    Mm-hm.

19    Q    Okay.  And at that particular time did you ask him

20    to bring a notarized letter for him residing in Maryland?

21    A    We were supposed to continue our conversation, he

22    did not return my call.

23        MR. JACKSON:  Your Honor, I have no further

24    questions.

25        THE COURT:  Any redirect?

```
 1          MS. NELSON: No, Your Honor.

 2          THE COURT: Thank you.

 3          MR. JACKSON: Your Honor, you've seen --

 4          THE COURT: I should ask also if there's any

 5   evidence you would introduce before I hear your argument.

 6          MR. JACKSON: Well, Your Honor, I'd like to

 7   introduce into evidence --

 8          (This portion of the tape was indiscernible.)

 9          THE WITNESS: Okay.

10          MR. JACKSON: -- the drug results. Counsel.

11          THE COURT: Anything further?

12          MR. JACKSON: Yes, Your Honor, I'm sorry, one more

13   document. Your Honor, this is a case of extreme violence,

14   and as you can see he has completed the domestic violence

15   program which is in the Course direct his anger to deal with

16   his anger management. He has done that, what the Court has

17   asked him. We've heard inconsistency from the probation

18   officer about times that he has reported. What we do have

19   before this Court is drug positive test results yet we heard

20   the admission from the probation officer my client had told

21   her that he was taking medication, medication that could

22   possibly produce false positive. There's been no challenge

23   on the positives, Your Honor, however we would submit that we

24   would like to make a challenge because we know what

25   medication he was taking at the time, and at the time he was
```

1  taking medication he could have produced a false positive.

2  We've heard testimony that the client is, in fact, gainfully

3  enrolled into a training program. And we've heard testimony

4  that the defendant has, in fact, contacted his probation

5  officer on a continuous basis. As far as the missed

6  appointments, we have heard testimony that my client has

7  contacted my client numerous times to reschedule. Your

8  Honor, I ask that the show cause be dismissed, Your Honor,

9  and let Mr. Longus remain on probation.

10      THE COURT: There's credible evidence before me that

11  the probation officer made very clear to the respondent

12  exactly how he was to communicate with her if he was

13  (indiscernible), that is to leave a voice mail message for

14  her. (Indiscernible) accommodation by the probation officer

15  (indiscernible). I have a statement that the gentleman was

16  tested for cocaine, opiates and marijuana (indiscernible) on

17  the 9th of April 2001, and he was found to have a negative

18  result that is less than (indiscernible) in relation to

19  cocaine, (indiscernible) in relation to the opiates and -.5

20  in relation to marijuana (indiscernible) in the violation

21  report presented by the officer for drug testing through C.

22  Sosa, and that was established without (indiscernible). The

23  gentleman was positive for cocaine on the date that he is

24  here for. (Indiscernible) the gentleman failed to report for

25  drug testing, had numerous extensions of drug testing by

1    failure to report. Mr. Longus previously appeared before me
2    for a show cause hearing that was ultimately discharged and
3    he (indiscernible) probation supervision that he failed to
4    do. Perhaps I was too generous. (Indiscernible) having
5    violated his probation and I do revoke probation. We are now
6    at a sentencing hearing for allocution.
7
8        MR. JACKSON: Court's indulgence. Your Honor, we
9    (indiscernible) my client. Your Honor, I'd like the Court to
10   try to at least consider the fact that he is here today to
11   address these allegations and let's look at the positive
12   things the defendant is doing. He is enrolling in a program
13   where he is trying to get his CDL license. The test results
14   apparently he has a substance abuse problem and we think we
15   need to address that through maybe a program, Your Honor. As
16   far as not paying the $100 he's making an adjustment in his
17   life by trying to get this CDL license, and he's not been
18   able to find gainful employment, that's why he's going
19   through a program so he can learn a new skill so he can be
20   employable, and he's working towards that. He has
21   successfully completed the anger management program which is
22   the nexus of particular incidents right here. He has
23   completed it. He is taking positive steps to rehabilitate
24   his life. We ask that you allow him to remain in the
25   community so he can address his drug program and he can

taf

1  finish this training program.

2      THE COURT: Thank you. Is there anything, Mr.

3  Longus, you would tell me before I sentence you?

4      MR. LONGUS: Yes, Your Honor. I can't get my words,

5  I'm nervous.

6      THE COURT: Yes, sir, you are facing a 20 year

7  sentence right now. Take your time. If you would like some

8  time to speak with your counsel and collect your thoughts I

9  can certainly give you that opportunity and continue this

10  matter for sentencing to this afternoon.

11      MR. JACKSON: Your Honor, I won't be available as of

12  12:30.

13      THE COURT: It can be today, it can be the last part

14  of August, September, October, November, December. It can be

15  whenever you choose even though this gentleman will be held

16  without bond pending sentencing.

17      MR. JACKSON: Could we set it for — yes, Your Honor,

18  can I have a brief pass.

19      THE COURT: Granted. Please step back with the

20  deputy, the gentleman will be held without bond and you can

21  tell me when you're ready for the matter to go to sentencing.

22  The probation officer need not (indiscernible) to be here any

23  longer —

24      MS. LEE: Thank you, Your Honor.

25      THE COURT: — unless you choose to stay, totally up

23

1    to you. Step back with the deputy please. Step back.

2                (Thereupon, the matter was passed.)

3    DEPUTY CLERK: United States v. Gregory Longus,

4    F1862-99.

5

6                THE COURT: Is Mr. Longus prepared to make his

7    statement today before he is sentenced or does he want a new

8    date?

9                MR. JACKSON: Your Honor, I'm asking for a new date.

10               THE COURT: (Indiscernible.)

11               MR. JACKSON: But Mr. Longus might have different

12   desires.

13               THE COURT: (Indiscernible.)

14               THE COURT: This matter was continued so Mr. Longus

15   could collect himself in order to make his allocution to me

16   before he is sentenced whether that is today or on a future

17   date.

18               MR. JACKSON: Your Honor, for the record, Steven

19   Jackson on behalf of Gregory Longus. I'm going to ask for a

20   continuance to Monday. I noticed in the file there was --

21               THE COURT: It would be Tuesday.

22               MR. JACKSON: Tuesday. I noticed in the file there

23   was a forensic order and I didn't see a copy of the report.

24               THE COURT: I have it right here and I've read it

25   again in the anticipation of this hearing along with the pre-

                                                              24

1  sentence report as I read the record of the findings of fact
2  where this gentleman I found while his estranged partner had
3  a pending case against him in the domestic violence unit went
4  with a broken bottle and cut her ear to leave it dangling
5  almost completely severing her ear from her head, and
6  thereupon plead guilty to a threats charge that no one could
7  have disputed because he threatened to F her up in the
8  presence of the police officer while he was in custody, and
9  it's a very ugly case, and I took pains to make a deep study
10 of every aspect of this gentleman's life including his mental
11 health before I gave him that opportunity with mental health
12 supported probation split sentence. At the same time I did
13 that because his record prior to this extremely violent
14 offense didn't show that violence.

15     MR. JACKSON: Your Honor, I'm still --

16     THE COURT: Now, we've got the probation.

17     MR. JACKSON: I'm still requesting Tuesday, Your

18 Honor.

19     THE COURT: You can have next Tuesday, that's the

20 31st of July, but I've read every, every, every detail of

21 this gentleman's file and I will hear his allocution and

22 anything you wish to say to me I want in writing before

23 Tuesday and served personally on the prosecutor.

24     MR. JACKSON: Yes, Your Honor.

25     THE COURT: Is there any particular prosecutor who

25

FORM FED ⊕ PENGAD • 1-800-631-6989

taf

1   will attend the matter and be prepared to represent the

2   Government's interests or is that just left to chance?

3       MS. CHUNG: Mia Chung on behalf of the United

4   States. Your Honor, I will go back to our office and find

5   out who was the successor for this '99 case and make sure

6   that we have some information. I myself looked at the jacket

7   --

8       THE COURT: I suspended an 80 month to 20 year

9   sentence --

10      MS. CHUNG: Yes.

11      THE COURT: -- and that's the time the gentleman

12  faces. And if the United States has a position you can

13  articulate it.

14      MS. CHUNG: Yes, Your Honor.

15      THE COURT: It would not have been unjust to give

16  this gentleman 20 years at the original sentencing.

17      MR. LONGUS: Your Honor, may I, may I say something,

18  sir?

19      THE COURT: You'll have your opportunity next week.

20  Thank you. Held without bond pending sentencing.

21      MR. JACKSON: Thank you, Your Honor.

22      (Thereupon, the matter was continued.)

23

24

25

26

C E R T I F I C A T E

I, Tricia A. Fritz, a transcriber, do hereby certify that I transcribed the proceedings and the testimony adduced in the matter of UNITED STATES v. GREGORY M. LONGUS, JR., Case No. F1862-99 in said Court, on the 24th day of July, 2001.

I further certify that the foregoing pages constitute the official transcript of said proceedings as transcribed from audio recording to the best of my ability.

In witness whereof, I have hereto subscribed my name, this, the 30th day of November, 2001.

Tricia A. Fritz